**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0665n.06

No. 09-5832

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 29, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ERNEST REAGAN, | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant-Appellant. | ) | |

Before: KETHLEDGE and WHITE, Circuit Judges; BECKWITH, Senior District Judge.[*]

**BECKWITH, Senior District Judge.** Ernest Reagan, a federal prisoner proceeding through counsel, appeals a district court order denying his motion to suppress evidence based on an alleged violation of the Fourth and Fifth Amendments. After the motion was denied, Reagan pleaded guilty to several drug and firearm offenses, and he was sentenced to life imprisonment. Reagan argues that there was no probable cause to arrest him and, thus, all evidence obtained should have been suppressed.

Reagan's arrest occurred at approximately 4 a.m. at a gas station. That morning in 2007, Deputy Sheriff Chad Faulkner, who had just completed his shift, was sitting in his unmarked vehicle at the gas station reading a newspaper when he noticed a black car parked approximately thirty feet

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

behind him.  Faulkner heard two people arguing in the car.  The passenger, a female, exited the car

and entered the gas station.  The driver, a male, remained in the car and turned up the volume on his

stereo.  At that point, Faulkner, who was not in uniform, put on his badge, secured his weapon, and

approached the black car from the front and asked the driver (later identified as Reagan), "What's

the disturbance?"  Reagan replied that there was no disturbance.  Faulkner, however, noticed two

containers or clear glasses of alcohol in the car's middle console and smelled alcohol coming from

the car.  He asked Reagan to step out of the car and noticed that, as Reagan attempted to get out of

the car, "he stuck his left hand in his left front pocket and pulled a semiautomatic pistol out and put

it in the door pocket of the driver's side door."  Once Reagan was out of the car, Faulkner cuffed and

patted Reagan down.  And with Reagan secured, Faulkner read him his *Miranda* (*v. Arizona*, 384

U.S. 436 (1966)) rights.  He then asked Reagan if there were any other weapons in the car, to which

Reagan responded that there was another gun in the car's center console.  Faulkner opened the

console and retrieved a loaded .38-caliber revolver.  He also retrieved the semiautomatic pistol,

unloaded both weapons, and placed them on the hood of the car.

Faulkner placed both Reagan and the female passenger under arrest.  He then called to have

Reagan's car towed and conducted an inventory search of the car and its contents.  Faulkner opened

a shoe box sitting on the passenger-compartment floor and found electronic scales, two ounces of

crack cocaine, and eight ounces of powder cocaine.  Faulkner also discovered a bottle of liquor on

the car floor.

At the hearing on Reagan's motion to suppress, Faulkner testified that the first time he cuffed

Reagan, it was to detain him for officer safety, and that he arrested Reagan on a felony weapons

charge and for public intoxication after he patted him down for a second time in front of the patrol officer's cruiser. At some point during these events, Faulkner learned that Reagan had previously been convicted of a felony. The magistrate judge was unable to determine, however, whether Faulkner placed Reagan under arrest before or after learning that Reagan had a previous felony conviction. The magistrate judge issued a report and recommendation to deny the motion, concluding that Faulkner had probable cause to arrest Reagan for carrying a firearm either with the intent to go armed, a misdemeanor offense, or as a felon, but not for intoxication, disorderly conduct, violation of a state open-container law, or for excessive noise from his vehicle. The magistrate judge further concluded that the subsequent search of Reagan's car was not unconstitutional. Overruling Reagan's objections, the district court issued an order accepting the magistrate judge's recommendation and denying Reagan's motion.

When reviewing a district court's denial of a motion to suppress evidence, we will "uphold the district court's factual determinations unless clearly erroneous, but we [will] review the district court's legal conclusions, such as the existence or absence of probable cause, *de novo*." *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (citation omitted). The evidence, however, must be considered "in the light most favorable to the government." *Id.* (internal quotation marks and citation omitted).

Reagan's principal argument on appeal is that Faulkner lacked probable cause to arrest him and, thus, the subsequent inventory search of his vehicle was unconstitutional.

> Whether [an] arrest was constitutionally valid depends in turn upon whether, at the
> moment the arrest was made, the officers had probable cause to make it - whether at
> that moment the facts and circumstances within their knowledge and of which they

had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). "'Probable cause is a standard more stringent than reasonable suspicion, but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false.'" *Campbell*, 486 F.3d at 955 (citation omitted).

We find that Faulkner had probable cause to arrest Reagan under Tenn. Code Ann. § 39-17-1307(a)(1), a misdemeanor weapons offense, after he observed Reagan move a gun from his pants pocket to the driver's side door and then found another loaded pistol inside the car. Although Faulkner testified that he did not arrest Reagan on this basis, we have previously held that "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant[]." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991). "Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists." *Id.* The United States argues in addition that the arrest did not occur until Reagan was placed in the police cruiser, which was after Faulkner learned about Reagan's prior felony conviction, and thus Faulkner had probable cause to arrest him for the Tennessee felony weapons offense, Tenn. Code Ann. § 39-17-1307(b)(1), (2), and also for violating 18 U.S.C. § 922(g)(1). However, the magistrate judge was unable to determine whether the arrest actually occurred before or after Faulkner learned of Reagan's previous felony conviction. We need not decide whether Faulkner did in fact have probable cause to arrest on the felony weapons charge because, in any event, probable cause existed to arrest for the misdemeanor weapons offense.

Reagan argues on appeal, without any supporting authority, that at the time of the arrest, Faulkner lacked probable cause to arrest for a weapons charge because Reagan was arrested before Faulkner first conducted a records check to determine whether Reagan had a weapons permit. This argument lacks merit. In Tennessee, carrying a weapons permit is an affirmative defense, *see* Tenn. Code Ann. § 39-17-1308; the lack of a permit is not an element of the offense. There is no indication that Faulkner was aware of any circumstances that would indicate that Reagan had a valid permit. *See Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002); *see also United States v. Reed*, 220 F.3d 476, 479 (6th Cir. 2000). Indeed, Reagan has not alleged at any time that he had a valid weapons permit. Further, had Reagan made such a claim to Faulkner, it would have been entirely reasonable for Faulkner to detain him while investigating whether he, in fact, had a permit. At this point, Faulkner would have discovered that Reagan had a felony conviction.

Having found that Faulkner had probable cause to arrest Reagan, we now address whether the subsequent search of his vehicle was constitutional. Reagan has not challenged whether there was a proper search incident to arrest, *see New York v. Belton*, 453 U.S. 454, 460 (1981), but, as argued by the government, has conceded that the search was an inventory search. We therefore deem this issue effectively waived on appeal. *See United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004).

Although Reagan makes some references to the investigative detention, known as a "*Terry* stop," *see Terry v. Ohio*, 392 U.S. 1 (1968), we find that he has not developed any substantive argument as to why Faulkner lacked any reasonable suspicion and, thus, has also abandoned this issue on appeal. *See Brown v. Konteh*, 567 F.3d 191, 212 (6th Cir. 2009), *cert. denied*, 130 S. Ct.

1081 (2010) ("[I]ssues not adequately developed or argued in the appellate briefs are deemed abandoned and thus not addressed by this court."). At most, Reagan stated that he "does not concede" that Faulkner had a right to make a *Terry* stop. Such a summary averment does not sufficeas adequate briefing of this court, and thus this issue is not preserved on appeal.[1] *See United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002).

For the above reasons, we affirm the district court's denial of Reagan's motion to suppress.

---

[1]Subsequent to filing his appellate brief, Reagan submitted as supplemental authority Judge Moore's concurring opinion in *United States v. Carr*, 355 F. App'x 943 (6th Cir. 2009) (unpublished opinion). That opinion concerns whether the police interaction in question constituted a *Terry* stop or a consensual encounter and, if a *Terry* stop, whether the stop was supported by reasonable suspicion. Reagan's submission did not explain how Judge Moore's opinion was relevant to his appeal, so the submission does not alter our conclusion that any *Terry* issues have been abandoned. Further, the facts at issue in *Carr* are clearly distinguishable from those in the instant case, and so Judge Moore's opinion is of no aid to Reagan.