**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0562n.06

Case No. 13-3761

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RAMZI K. HALASAH, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CITY OF KIRTLAND, OHIO, et al. | ) | THE NORTHERN DISTRICT OF |
| Defendants, | ) | OHIO |
| | ) | |
| and | ) | |
| | ) | |
| JAMES FISHER, | ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: MOORE, WHITE, and DONALD, Circuit Judges.

**Bernice B. Donald, Circuit Judge.** Ramzi Halasah appeals the district court's grant of summary judgment to Kirtland, Ohio Police Officer James Fisher on Halasah's 42 U.S.C. § 1983 false arrest and malicious prosecution claims. Halasah argues that the district court erred in: (1) concluding that there were no genuine issues of material fact as to whether Fisher either knowingly or with a reckless disregard for the truth submitted an affidavit which contained falsehoods or omissions that created falsehoods; (2) finding that the allegations in Fisher's police report were sufficient to support a charge of Disorderly Conduct or Obstruction of Official Business; (3) finding that Fisher was insulated from a malicious prosecution charge because he did not influence the decision to prosecute Halasah; and (4) finding that Fisher was entitled to qualified immunity. We **AFFIRM** the district court's grant of summary judgment.

I.

In the wee hours of the morning on May 23, 2009, Kirtland Police Officer James Fisher discovered a group of teenagers drinking alcohol. Fisher requested assistance and remained at the scene while the three other responding officers rounded up several people, ages seventeen to nineteen, who had attempted to flee. The officers detained the teens and instructed them to contact their parents to pick them up.

Around 1:30 a.m., Ramzi Halasah received a telephone call explaining that his minor son, A.H., had been involved in an underage drinking party and needed to be picked up. Halasah stated that, when he arrived, the scene was noisy and chaotic due to the teens, the arriving parents, and the police officers. Halasah's son told him there had been a party but denied that he had been drinking; before Halasah arrived, however, A.H. had admitted that he was drinking. As police officers were trying to pair teens with their parents, Halasah approached one of the officers, Officer Eugene Volk, and asked to know why police were present at a private residence. He demanded that the police provide him with their probable cause for being on the property and claimed that the teens were just having fun and not doing anything wrong. When Volk's answers did not satisfy Halasah, Volk stated that Fisher was the investigating officer.

Halasah turned to questioning Fisher. According to Fisher, Halasah's loud and persistent interruptions forced him to stop the process of releasing another teenager to his parents; Halasah does not recall what Fisher was doing before he turned to address him. Halasah loudly demanded that Fisher explain how the officers had probable cause to be at a private residence and ordered Fisher to administer a field sobriety test and breathalyzer to A.H. Halasah refused either to provide his driver's license for identification or to sign the requisite paperwork to release A.H. As Halasah was arguing with Fisher, N.P., another of the teens, grew progressively

more upset and began slamming a stack of coolers.  Fisher thought that N.P. was "feeding off"

Halasah's confrontational conduct—an intuition later corroborated by N.P.'s mother, who was

present—and that Halasah was escalating the situation.  Fisher left Halasah to address N.P.,

placing N.P. in the back of a squad car but ultimately releasing him to his mother.

Upon additional prompting from Volk, Halasah finally provided identification and signed

the release paperwork for A.H.  Although he was free to leave, Halasah declined to do so, telling

police several times that he was not ready and once stating that he would not leave until he was

sure that N.P. was alright.  Fisher's deposition testimony and incident report indicate that

Halasah was asked to leave multiple times; although he now contends that he was not asked to

leave more than once, Halasah conceded in his deposition that he "possibly" was asked to leave

more than once but did not specifically recall.  After Fisher told Halasah that he would be

arrested if he did not leave, Halasah departed.

When he returned to the police station, Fisher prepared a police report, which contained a

recommendation of charges to be filed against several people who were at the party.  The report

stated that Halasah would have been arrested had there been more officers or fewer people on the

scene and recommended that Halasah be charged with "Obstruction of Official Police Business"

in violation of Ohio Rev. Code § 2921.31A.[1]  Fisher finalized and forwarded the report to

---

[1]  The report states in relevant part:

> At this point in time, Amy Smith (Mother of [T.S.]) arrived on scene. While speaking with Smith, Ramzi K. Halasah (Father of [A.H.]), and James Hopkins (father of [J.D.H.]) arrived on scene. [Officer] Volk was speaking with Halasah while I attempted to and [sic] complete the release to parent form to Smith.  Halasah became loud and began directing his question towards me due to Volk explaining to him that I was the investigating officer. Halasah was refusing to cooperate or sign anything. Halasah wanted to know how I knew his son had been drinking. I had to stop speaking with Smith and direct my attention towards Halasah who was attempting to escalate the situation.
>
> I approached Halasah and explained to him that his son was intoxicated and that he had already admitted to consuming alcohol.  Halasah stated that he wanted me to prove that his son was drunk and asked me to give him a field test. I explained to Halasah that I was not going to

administer any field tests at this time. Halasah stated that I was just picking on kids and that he did not understand what the big deal was.

At this point in time, [N.P.] began slamming and kicking the empty coolers that he had stacked in front of the garage. [N.P.] was yelling profanities out and appeared to be fueled by Halasah's argumentative behavior. I advised Halasah that I was not going to tolerate any further comments about his believes [sic]. I explained to Halasah that he was disorderly and escalating the incident. I explained to Halasah that any further comments would result in his arrest.

Volk attempted to intervene and asked Halasah for his driver license in order to verify who he was and to fill-out the release to parent form. . . .

\*\*\*

Volk completed the necessary paperwork (City of Kirtland Police Department's Release to Parent Form) with Halasah. Volk explained to Halasah that he was free to leave. I was now speaking to James Hopkins . . . .

After Hopkins left, I overheard Halasah telling Volk that he was not going to leave until his son's friend [N.P.] who was still seated in the rear of my patrol unit) [sic] was alright. Halasah was still being argumentative and still trying to control the situation. Volk and I explained to Halasah that it was not his place to be concern [sic] for [N.P.]. Volk explained to Halasah that [N.P.'s] mother was still here and would take responsibility for him. Halasah was not satisfied with that explanation and again stated that he was not leaving. I advised dispatch, who I was speaking with on the phone at this time, to have Sgt Andolsek respond back to the scene. I explained to dispatch that I was about to make an arrest, and things may get out of hand.

I again reiterated to Halasah that [N.P.'s] mother was still here and would take responsibility for him. I explained to Halasah that I was giving him a lawful order to leave now with his son. I explained to Halasah that failure to comply with my lawful order would result in his arrest. Halasah asked if I could shine my flashlight down the driveway so that he could see his way out. I explained to Halasah that he was able to walk down it while it was dark and he should be able to manage to walk back out. Halasah left the scene without any further incident or discussion.

At his point in time, Laura Pollice was upset and asked if [N.P.] was going to be arrested. Laura Pollice stated that [N.P.] was only getting loud because that man (Halasah) was getting him going (fueling the situation). I explained to Laura Pollice that I was not going to arrest [N.P.] at this time. . . I opened the rear door of my patrol unit and Sgt. Andolsek was seated next to [N.P.] and they were talking. Andolsek had already unhandcuffed [N.P.] Andolsek stated that [N.P.] was upset with himself about throwing the party and afraid of loosing [sic] his girlfriend. Andolsek stated that [N.P.] was feeding off of Halasah when he (Halasah) was arguing with us (the Police) . . . .

\*\*\*

NOTE: The above described situation was under control with the exception of Ramzi K. Halasah. Halasah attempted to escalate the situation and minimize his son and his friends underage drinking [sic]. Halasah attempted to place the blame on the police instead of on his trespassing son and his friends. Halasah was repeatedly ordered to refrain from his disorderly actions. Halasah attempted to dictate what was happening and unwilling to cooperate at times [sic]. At being ordered to leave several times he ultimately left. That being said, Halasah would have been arrested if numerous other individual were still on scene [sic]. Halasah arrest which would have created undue hardship on officers still on scene and other parents en-route to pick up their children [sic]. I believe Halasah committed the following violation of law: Disorderly Conduct. Failure to comply. Or all in inclusive. Obstruction of Official Police Business.

This report will be forwarded to the Lake County Juvenile Prosecutors Office and prosecutor Michael Germano for review. Below I have outlined each individual and potential charges to be filed if any.

\*\*\*

Ramzi K. Halasah          Obstruction of Official Police Business
[Address]                  (2921.31A) M2

prosecutor Michael Germano on June 9, 2009. Germano reviewed the report, decided to charge

Halasah with Disorderly Conduct under Ohio Rev. Code § 2917.11(A)(4), and conveyed this

information via fax to Fisher.

Based on Germano's instructions, Fisher prepared a Complaint, Summons, and Warrant

("Complaint") and appeared at a probable cause hearing before a magistrate of the Willoughby

Municipal Court. The Complaint states:

> No person shall recklessly cause inconvenience, annoyance, or alarm to another
> by doing any of the following: hindering or preventing so as to interfere with the
> rights of others, and by any act that serves no lawful and reasonable purpose to
> the offender
>
> To wit: Argumentative, disruptive and continually interrupted officers while
> attempting to conduct official business. Repeatedly asked to refrain from these
> actions and repeatedly asked to leave before actually doing so
>
> This being Disorderly Conduct. A violation of Ohio Revised Code 2917.11A4, a
> misdemeanor of the 4th degree

This recitation omits a sizeable portion of the statute. Section 2917.11(A)(4) actually reads:

"Hindering or preventing *the movement of persons on a public street, road, highway, or right-of-*

*way, or to, from, within, or upon public or private property*, so as to interfere with the rights of

others . . . ." Ohio Rev. Code § 2917.11(A)(4) (emphasis added). The magistrate reviewed the

information, questioned Fisher, who explained the incident, and then signed the arrest warrant.

Fisher attempted to call Halasah to notify him of the Complaint but ended up leaving a

message. Cleveland Police arrested Halasah on July 13, 2009, when he appeared in traffic court

on an unrelated matter. At a bench trial on September 30, 2009, Halasah was acquitted because

the prosecution could not satisfy the "movement element" of Ohio Rev. Code § 2917.11(A)(4).

II.

After his acquittal, Halasah sued the City of Kirtland, Kirtland Police Chief Wayne Baumgart, and Fisher under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments, claiming false arrest, malicious prosecution, and failure to implement appropriate policies, customs, and practices. On May 26, 2011, before the parties had taken any depositions, the district court granted the defendants' motion for summary judgment. The district court determined that the existence of probable cause foreclosed Halasah's false arrest and malicious prosecution claims and that Halasah failed to demonstrate any constitutional violations by Baumgart. The district court went on to conclude that Halasah's failure to establish a constitutional violation precluded municipal liability and entitled Fisher and Baumgart to qualified immunity.

Halasah appealed. On June 21, 2012, this Court, in a per curiam opinion, affirmed the district court's grant of summary judgment on all the claims against the City and Chief Baumgart. *Halasah v. City of Kirtland*, 485 F. App'x 776 (6th Cir. 2012). We, however, reversed the grant of summary judgment to Fisher, reasoning that genuine issues of fact remained as to whether Fisher was entitled to rely on the arrest warrant he prepared. *Id*. at 778-79. We remanded, stating "we leave it to the district court to decide whether other defenses warrant summary judgment in favor of Officer Fisher." *Id.* at 779.

Halasah and Fisher then engaged in fuller discovery, including depositions of one another, and filed cross motions for summary judgment. Ruling on these motions, the district court denied Halasah's motion and again granted summary judgment to Fisher. The district court concluded that Fisher's false arrest claim failed because there was probable cause to arrest Halasah for Disorderly Conduct. Because Fisher did not influence the decision to prosecute

Halasah, the district court determined that Halasah's malicious prosecution claim likewise failed. The court also concluded that Halasah's claims failed because there was probable cause to arrest and prosecute him for Obstructing Official Business under Ohio Rev. Code § 2921.31(A). Finally, the court concluded that Fisher was entitled to the defense of qualified immunity because he did not violate any of Halasah's clearly established constitutional rights. Halasah again appeals the district court's grant of summary judgment.

## III.

We review de novo a district court's grant of summary judgment using the *Matsushita-Anderson-Celotex* standard. *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We do not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which it must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party may not "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 586). A

party asserting a genuine issue of material fact must support this argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Evidence that is "merely colorable" or "not significantly probative" is insufficient. *Anderson*, 477 U.S. at 248-52. If there are no disputed material facts, we review de novo whether the district court properly applied the substantive law. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2003).

IV.

Halasah argues that the district court erred in granting summary judgment on his false arrest claim because there is, at minimum, a genuine issue of material fact regarding whether Fisher lacked probable cause to arrest him for Disorderly Conduct under Ohio Rev. Code § 2917.11(A)(4). Probable cause exists when, considering the totality of the circumstances, the arresting officer knew of sufficient facts and circumstances to permit a prudent person to believe that the suspect committed an offense. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).

To prevail on a false arrest claim, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff; put differently, probable cause provides a complete defense to a claim of false arrest. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)). When an arrest is made pursuant to a warrant, a plaintiff must prove (1) that the officer applying for the warrant, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that

created a falsehood and (2) that such statements or omissions were material to the finding of probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *see also Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Fisher argues that even if he lacked probable cause to arrest Halasah for Disorderly Conduct, he nonetheless is insulated from the false arrest claim because he had probable cause to arrest Halasah for Obstructing Official Business under Ohio Rev. Code § 2921.31(A), the crime with which he initially recommended Halasah be charged. "[A]n arresting officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) (quoting *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004) (citations omitted)). Accordingly, "'knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant[].'" *United States v. Reagan*, 401 F. App'x 14, 16 (6th Cir. 2010) (quoting *United States v. Anderson,* 923 F.2d 450, 457 (6th Cir. 1991)).

The Obstructing Official Business statute provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Ohio Rev. Code § 2921.31(A). Ohio courts break Obstructing Official Business into five elements: (1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege. *E.g. Ohio v. Kates*, 865 N.E.2d 66, 73 (Ohio Ct. App. 2006). The record indicates that Fisher had probable cause to arrest Halasah for Obstructing Official Business.

The first element is easily satisfied; Halasah engaged in a number of acts, notably interrupting Fisher as he was in the process of releasing another teen to his parents, escalating the situation by asking questions in an aggressive manner and demanding that Fisher administer sobriety tests to A.H., and refusing to provide identification for himself or sign release paperwork for his son. The fourth element is also easily satisfied; Fisher was in the process of performing a lawful duty—investigating underage drinking and releasing minors to their parents. Turning to the third element, Halasah's interruptions hampered Fisher from being able to finish releasing one teen, and Halasah's refusal to provide identification and sign paperwork impeded A.H.'s own release. Further—contrary to Halasah's contention that his being a parent of a minor child allowed, or even compelled, him to act as he did—the fifth element is satisfied because Halasah was acting without privilege.

Assessing the second element, Halasah's purpose, is slightly thornier. "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *Ohio v. Wellman*, 879 N.E.2d 215, 219 (Ohio Ct. App. 2007) (quoting *In re Payne*, 2005-Ohio-4849 at *3 (Ohio Ct. App. 2005)). In *Wellman*, the Ohio Court of Appeals held that the defendant violated Ohio Rev. Code § 2921.31(A) by yelling at police officers, refusing to provide identification, and thereby hindering them from apprehending a suspect; the *Wellman* court noted that the defendant impeded the investigation "not just by asking questions, but by being belligerent and argumentative." *Id*. at 218. Halasah too went beyond merely asking questions: He was loud, argumentative, and distracting; he insisted that the underage drinking was not a big deal and that the officers were just "picking on" the minors; and he initially refused to provide identification. Although Halasah's behavior admittedly did not reach the level of the *Wellford* defendant, Fisher

was nonetheless justified in concluding for the purpose of a probable cause determination that Halasah's purpose was to impede, obstruct, or delay.

Halasah quibbles with a number of facts—for example, pointing out that even with Halasah's supposed obstruction, Fisher managed to release more teens to their parents than Volk did—to argue that he did not violate § 2921.31(A). But whether Halasah actually obstructed official business is not at issue here; rather, Fisher only needed probable cause to conclude that Halasah was obstructing official business. Even if we assume that there was not probable cause to arrest Halasah for Disorderly Conduct, there was probable cause to arrest Halasah for Obstructing Official Business. Accordingly, the district court did not err in granting Fisher summary judgment on Halasah's false arrest claim.

V.

Halasah also appeals the district court's grant of summary judgment to Fisher on his malicious prosecution claim. To prevail on a 42 U.S.C. § 1983 malicious prosecution claim premised on a violation of the Fourth Amendment, a plaintiff must prove four things: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the prosecution, the plaintiff suffered a deprivation of liberty, as understood in Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes*, 625 F.3d at 308-309 (citations omitted). The district court found that Halasah could not satisfy the first two elements and therefore granted summary judgment to Fisher. Halasah argues that the district court incorrectly discounted Fisher's role in the decision to prosecute him for Disorderly Conduct and that the district court erred in concluding that probable cause supported his prosecution.

Halasah's malicious prosecution claim fails because Fisher did not make, influence, or participate in the decision to prosecute Halasah for Disorderly Conduct. We have long held that a police officer who did not make the decision to prosecute cannot be held liable for malicious prosecution. *See, e.g.*, *Skousen v. Brighton High Sch.,* 305 F.3d 520, 529 (6th Cir. 2002) (citing *Coogan v. City of Wixom,* 820 F.2d 170, 172-73 (6th Cir. 1987), *recognized as overruled on other grounds in Frantz v. Vill. of Bradford,* 245 F.3d 869 (6th Cir. 2001)). The record indicates that the decision was not Fisher's. When Fisher completed his incident report, he forwarded to it Germano. Then, as explained in his affidavit, Germano decided to charge Halasah with Disorderly Conduct.

Halasah does not appear to contest that Germano, not Fisher, decided to charge him with Disorderly Conduct so much as he contends that the district court erred in discounting Fisher's role as the person who drafted the Complaint. That Fisher physically drafted the Complaint, however, is irrelevant; by the time Fisher was writing the Complaint, Germano—without Fisher's influence or participation—had already made the decision to prosecute Halasah for Disorderly Conduct. In drafting the Complaint, Fisher was merely formalizing Germano's charging decision. Because Fisher did not make, influence, or participate in the decision to prosecute Halasah for Disorderly Conduct, the district court did not err in granting summary judgment to Fisher on Halasah's malicious prosecution claim.

## VI.

Accordingly, for the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment as to Fisher.