RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHNNY TLAPANCO,

*Plaintiff-Appellant*,

*v.*

No. 19-1392

JONATHAN ELGES, et al.,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13465—Arthur J Tarnow, District Judge.

Argued: January 30, 2020

Decided and Filed: August 12, 2020

Before: SILER, GIBBONS, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Solomon M. Radner, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellant. Rick J. Patterson, POTTER, DEAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellees Elges, McCabe, and Oakland County, Michigan. **ON BRIEF:** Solomon M. Radner, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellant. Rick J. Patterson, Steven M. Potter, Robert C. Clark, POTTER, DEAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellees Elges, McCabe, and Oakland County, Michigan.

GIBBONS, J., delivered the opinion of the court in which SILER and THAPAR, JJ., joined. THAPAR, J. (pp. 24–26), delivered a separate concurring opinion.

---

**OPINION**

---

JULIA S. GIBBONS, Circuit Judge.  Fourteen-year-old A.F. reported to police that she was being blackmailed by a user on the messaging application Kik.  She explained that the perpetrator had obtained nude photographs from her phone and was threatening to release the images if she did not send additional nude photographs.  Oakland County, Michigan, deputies investigated her claims but disregarded the fact that the blackmailer used the Kik username "anonymousfl" rather than "anonymous"—a separate Kik username associated with Johnny Tlapanco, a New York resident.  As a result, New York Police Department ("NYPD") officers working with Oakland County Deputy Jonathan Elges, searched Tlapanco's apartment, seized his electronic devices, arrested him, and detained him in New York for two weeks before extraditing him to Michigan and detained him at the Oakland County jail for an additional three weeks before the charges were dismissed.

Tlapanco sued the deputies and Oakland County under 42 U.S.C. § 1983, alleging that: (1) Elges unlawfully searched his apartment, caused his false arrest, and prosecuted him for offenses related to child pornography; (2) Deputy Michael McCabe unlawfully seized, searched, and copied his electronic devices prior to returning them to him; and (3) Oakland County is liable for failure to train or because of McCabe's decisions as a purported county policymaker.[1]  The district court granted summary judgment in favor of all appellees.  Tlapanco challenges the district court's grant of summary judgment to Elges, McCabe, and Oakland County.  We affirm the grant of summary judgment to McCabe and Oakland County, but reverse the district court's grant of qualified immunity to Elges on Tlapanco's Fourth Amendment unlawful search and seizure, unlawful arrest, and malicious prosecution claims.

---

[1]Tlapanco also brought claims against the NYPD and NYPD officer Gregory Thornton.  The district court granted these defendants' motion for summary judgment.  Tlapanco did not appeal the district court's decision to grant the New York defendants' motion for summary judgment.

I.

On March 6, 2014, an Oxford High School ("OHS") resource officer contacted Elges of the Oakland County Sheriff's Office ("OCSO") to report a student facing threats of blackmail. Elges interviewed the student who reported the threats, A.F., as well as other students at OHS. A.F. reported to the resource officer that an individual, "anonymous," was threatening to release nude images of her hacked from her phone if she did not send additional images. The anonymous user transmitted the threats through a messaging application called Kik that A.F. and others used. A.F. received the threatening messages between March 4 and March 6.

After the interview with Elges, A.F. turned over her phone and iPod to Elges for further investigation. Based on his conversation with A.F., Elges immediately sent a request to Kik seeking information on the individual using the *username* "anonymous" on the Kik application. The distinction between a display name and a username is critical because a Kik user only has one unique *username*, but a user can change his *display name* at any time and the display name is not unique to that user. Elges learned about the difference between a display name and username on Kik in his conversation with A.F. and the other students at the beginning of his investigation. Kik's response linked the username "anonymous" to an email address as well as to two IP addresses where the user had logged onto the Kik application. The response presented data associated with the account from February 9, 2014 to March 13, 2014—including the March 4–6 period during which A.F. received the threatening messages—and contained the date and time of the activity and a coded "extra data" column. DE 54-7, Kik Request Resp., PageID 1451–65. The response did not list which accounts "anonymous" messaged nor the contents of those messages.

A deputy assisting Elges's investigation, Deputy Carol Liposky, extracted information from A.F.'s phone and iPod, including information regarding her Kik messages. Liposky exported A.F.'s messages into an Excel spreadsheet that was later given to Elges. The spreadsheet includes columns for direction (i.e., sent or received), attachments, time, display name, username, and contents of the message. The content in the time, display name, and username columns appears cut off and incomplete unless the cells in the spreadsheet are expanded. When the cells in the spreadsheet are expanded, the *display name* of the individual

threatening A.F. is "anonymous," but the *username* is "anonymousfl." DE 54-8, A.F. Kik Messages Excel Spreadsheet, PageID 1472. Elges testified that he "look[ed] at the report" but "did not expand the cell" for username. DE 44-2, Elges Dep., PageID 641, 631–32. He therefore claimed he "did not see the last two letters of the cell," and believed that both the username and the display name of the suspect were "anonymous." *Id.* at 642.

Based on the email address received from Kik, Elges sent a request to Google seeking information about the email's owner. Google's response listed Tlapanco as the owner of the email, included a backup email address, and that the email account had been accessed at the same two IP addresses that Kik indicated had accessed the Kik application. Additionally, Elges tracked the IP addresses and discovered one address was assigned to the network of Kingsborough Community College and the other was registered to private user Pastora Tlapa, Tlapanco's mother, in Brooklyn, New York.

Based on the collected information, Elges sought a search warrant for the two New York City locations associated with the IP addresses. His sworn affidavit for the warrants provided that Elges was the deputy in charge of the investigation, relayed his conversation with A.F. and the other students, summarized the Kik messages at issue, discussed the Kik request and response regarding the IP addresses, and summarized his process for confirming the IP addresses through further requests to the online providers and Google.

Based solely on Elges's affidavit and no additional investigation, NYPD officer Gregory Thornton swore to the warrant request and received search warrants for Kingsborough Community College and Tlapanco's apartment. Thornton, accompanied by Elges and others, executed a search of the Brooklyn apartment on May 21, 2014. The officers seized a variety of electronic devices, including several iPods, a desktop computer, laptops, and several thumb drive storage devices.

Additionally, the officers interviewed Tlapanco in the apartment after the search. During the interview, Tlapanco stated that he created a Kik account with the username "anonymous" in January 2013 but had only actively used the account since March 2014. When asked whether he knew why the police were at the apartment, he replied that he did not know, but when prompted

about requesting nude pictures, Tlapanco stated that he only had requested pictures from two individuals using Kik but had received or downloaded other pictures from Kik and other websites.  He identified the two individuals he requested pictures from as "Sophiuchiha" and "Yoursluttysecret428," alternatively identified as "Brianna" and "Quincy," and stated that they were 19 and 22.  DE 54-4, OCSO Report, PageID 1428–30; DE 54-9, Tlapanco Police Statement, PageID 1474.  He denied sending the messages A.F. received that the officers showed him, denied ever receiving "child porn," and denied having any images of A.F.  DE 54-4, OCSO Report, PageID 1430–31; DE 54-9, Tlapanco Police Statement, PageID 1474–77.  He further requested the officers use his username and password and investigate the messages sent from his account to confirm that he did not send the messages to A.F.

Tlapanco's written statement after the interview reiterated his statements from the interview, but also included additional statements responding to the allegations:

> I don't remember doing such a thing.  It may have happened, but as the officers said, it may have been a one-time thing, just feeling crazy that day.  I don't know for sure, and without the [Kik message] logs, I cannot confirm that it happen[ed].  I am not denying it either.  I am not a bad person, and I want to help the officers . . . . I've never received nude pictures from underage girls from Kik or anything else.

DE 54-9, Tlapanco Police Statement, PageID 1475.

After the NYPD seized Tlapanco's electronics, the devices were turned over to the OCSO for forensic analysis.  Over 18,000 images were recovered from the iPod but none of the images were of A.F.  According to the OCSO police logs, the forensic analysis of the iPod found images in poses and outfits "similar" to the ones requested by A.F.'s blackmailer.  DE 54-4, OCSO Report, PageID 1431.  The forensic report also included Kik messages, but "the earliest date of the messages stored on the Ipod [sic] were from March 17, 2014." *Id.* at 1432.  Notably, this is after the date of the messages sent to A.F. and consistent with Tlapanco's statement that he did not begin actively messaging on Kik until March 2014.

Based on the accumulated information and at Elges's request, the Oakland County Prosecutor's Office sought to charge Tlapanco with eight counts relating to child sexually abusive acts, using a computer to commit a crime, and accosting a minor for immoral purposes.

Oakland County issued an arrest warrant, and New York police arrested Tlapanco in July 2014, after which he spent two weeks in jail in New York. Tlapanco was then extradited to Michigan and held at the Oakland County jail for three weeks.

Tlapanco was arraigned in Michigan but, prior to the pre-examination hearing, the charges were dismissed without prejudice after Elges and the prosecutor realized they had arrested Tlapanco, who used the username "anonymous," and not the blackmailer, who used the username "anonymousfl." The prosecutor stated that he would "follow up with a formal nolle pros order once some further investigation [wa]s completed." DE 44-8, Prelim. Examination Tr., PageID 725. Additionally, Tlapanco's attorney requested and the court approved that Tlapanco's property be returned to him and his fingerprint card be destroyed.

Prior to returning Tlapanco's electronics, McCabe, the undersheriff and chief of staff for the OCSO, directed the data from the electronic devices to be copied so that the OCSO could retain a forensic mirror of the data after returning the actual devices to Tlapanco. McCabe testified that the Oakland County Prosecutor's Office directed him to have the devices' data copied so that it could be used to further investigate Tlapanco. McCabe also testified that he did not know whether the OCSO had previously made a copy of data from other defendants' devices prior to returning them.

In March 2015, Tlapanco filed his first complaint against Elges, Liposky, the Oakland County Sheriff, and Oakland County. In September 2018, Tlapanco filed his fourth amended complaint, which included additional claims against McCabe, Thornton, and the NYPD. Under 42 U.S.C. § 1983, Tlapanco alleged violations of the Fourth Amendment for unlawful search of his apartment and seizure of his electronic devices without probable cause, unreasonable arrest and imprisonment without probable cause, unlawful search and seizure by copying the data on his devices after dismissal of the case, malicious prosecution, and county liability based on a failure to train theory and McCabe's decision to copy his data as a final policymaker for Oakland County.

In October 2018, Tlapanco; the NYPD and Thornton; and Oakland County, Elges and McCabe all filed motions for summary judgment. The district court heard argument on the

motions in March 2019.  The district court granted Elges's motion because the court found that Tlapanco failed to provide evidence of Elges's recklessness or malice instead of mere negligence and that, therefore, the search, seizure, arrest, and prosecution were supported by probable cause. As to McCabe, the court found that he was entitled to qualified immunity because there was no case in the Sixth Circuit addressing retention of forensic mirrors.  The court granted the NYPD and Thornton's motion because it concluded Tlapanco did not present any facts indicating Thornton should have known the warrant upon which he relied was invalid.  The district court did not address the Oakland County liability claim, presumably because it did not find an underlying constitutional violation by Elges or McCabe.  The district court later issued a written order summarily confirming its oral decisions to dismiss all the claims.   Tlapanco timely appealed the district court's decision granting the Oakland County defendants' motion for summary judgment.

## II.

"We review a district court's grant of summary judgment de novo."  *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (quoting *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 486 (6th Cir. 2006)).  Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(a)).  In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  Qualified immunity involves a two-step inquiry.  First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation.  *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  Second, if there is a constitutional violation, the court must

determine whether that constitutional right was clearly established at the time of the incident. *Id.* Courts exercise discretion in deciding in which order to address the questions. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (alteration in original) (internal citation omitted). In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *See id.*

## III.

### A.  Claims Against Elges

We reverse the district court's grant of summary judgment in favor of Elges based on qualified immunity. Based on the facts alleged and the evidence produced, viewed in the light most favorable to Tlapanco, a reasonable juror could find that Elges violated Tlapanco's Fourth Amendment rights to be free from warrantless searches and seizures, arrest without probable cause, and malicious prosecution. These violations were of clearly established law. Elges, therefore, is not entitled to qualified immunity on these federal claims. We affirm the district court's grant of summary judgment to Elges on Tlapanco's unlawful search and seizure claim regarding mirroring his electronic devices prior to returning the physical devices because Tlapanco provided no evidence that Elges was involved in this process.

### 1.

Tlapanco argues that the district court erred in granting qualified immunity to Elges on his unlawful search and seizure claim. Elges is entitled to qualified immunity unless Tlapanco has shown that a reasonable jury could find that Elges violated his clearly established Fourth Amendment right to be free from searches and seizures without probable cause. We hold that a reasonable jury could find that Elges's warrant affidavit contained a false statement or omission that was made with reckless disregard for the truth, and that his statements caused a warrant to be issued without probable cause. The right to be free from searches and seizures predicated on an

officer's reckless submission of false statements in a warrant affidavit is clearly established.  We therefore reverse the district court's grant of summary judgment on the basis of qualified immunity on the illegal search and seizure claim.

Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV.  "Probable cause exists 'if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)).  The officer must examine "the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).  "In the context of child pornography, an affidavit that connects a defendant, an offending username, and the defendant's residence is enough to establish probable cause for a search."  *United States v. Carter*, 792 F. App'x 366, 368 (6th Cir. 2019) (citing *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014)); *see also United States v. Lapsins*, 570 F.3d 758, 766 (6th Cir. 2009).

In the Fourth Amendment search and seizure context, "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).  However, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.*

A plaintiff, thus, may challenge an officer's qualified immunity defense in a civil rights case by showing that (1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) the false statement or omission was material to the finding of probable cause. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  Once a plaintiff makes the first showing, the Fourth Amendment requires the court to "set aside the

[false] statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." *Sykes*, 625 F.3d at 305. "A plaintiff shows substantial evidence of deliberate falsehood or reckless disregard when, for example, he presents proof that at the time the officer swore out the affidavit, she knew of or possessed information that contradicted the sworn assertions." *Butler v. City of Detroit*, 936 F.3d 410, 419 (6th Cir. 2019). It is generally the jury's role to determine whether probable cause supported issuance of a search warrant unless the only "reasonable determination" that a jury could make is that probable cause existed. *Yancey*, 876 F.2d at 1243.

In general, "[t]he right to be free from warrantless searches of one's home is clearly established, as is the right to be free from searches predicated on an officer's intentional or reckless submission of false statements in a warrant affidavit." *McCallum v. Geelhood*, 742 F. App'x 985, 991 n.6 (6th Cir. 2018) (internal citations omitted). Similarly, it is clearly established that in general (and absent a warrant exception, which is not relevant here) "a seizure of personal property [is] *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *United States v. Place*, 462 U.S. 696, 701 (1983); *see also Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002) ("[S]eizures of personal property require probable cause."). Yet because "immunity protects all but the plainly incompetent or those who knowingly violate the law," this court must not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal citations omitted); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam). Rather, to overcome qualified immunity, the evidence must support the conclusion "that *every* reasonable officer in [the officer's] shoes would have recognized" that the search and seizure were unreasonable "in the *precise* situation [the officer] was facing." *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017).

For several of Tlapanco's claims, however, the "breathing room" granted to officers by qualified immunity is not dispositive given the facts of this case. *Ziglar*, 137 S. Ct. at 1866 (internal citation omitted). Specifically, with regard to all of Tlapanco's Fourth Amendment

claims against Elges except the mirroring claim, the primary issue to resolve is whether a reasonable jury could find that, when he applied for the search and arrest warrants, Elges intentionally or recklessly disregarded material facts negating probable cause. Further, while it will sometimes be possible for officers to make "reasonable but mistaken judgments" about the materiality of the information omitted, that is not true here. *Ziglar*, 137 S. Ct. at 1866 (internal citation omitted). In this case, as described below, the information Elges left out of the warrant applications obviously negated probable cause because it demonstrated that Tlapanco was not the Kik user harassing A.F. Thus, under the circumstances of this case, Elges is not entitled to qualified immunity as long as a reasonable jury could find that his omission of this information was intentional or reckless. With this in mind, we proceed to examine Tlapanco's Fourth Amendment claims against Elges.

Elges searched Tlapanco's apartment and seized his electronic devices pursuant to a judicially issued warrant. At summary judgment, Tlapanco must make a "substantial showing" of a genuine dispute of material fact regarding whether Elges's affidavit contained "a deliberate falsehood or showed reckless disregard for the truth." *Vakilian*, 335 F.3d at 517. Tlapanco seeks to rebut the presumption of probable cause created by the warrant by presenting evidence of information Elges possessed "that contradicted the sworn assertions" in his affidavit. *Butler*, 936 F.3d at 419. Specifically, Tlapanco provides evidence that (1) Elges knew the difference between a display name and username yet failed to confirm the username of the user threatening A.F.; (2) the Kik activity log showed that the username "anonymous" did not send the messages to A.F.; and (3) Elges possessed A.F.'s messages and a spreadsheet compiling the messages showing that the messages were sent from username "anonymousfl." Viewing the evidence in the light most favorable to Tlapanco, while there is no indication that Elges acted intentionally or deliberately, a reasonable jury could find that Elges recklessly disregarded information in his possession negating probable cause that the username "anonymous," and by extension Tlapanco, was responsible for hacking A.F. or sending the messages. Therefore, there is a genuine issue of material fact whether the statements of material fact or omissions in Elges's affidavit were made recklessly.

First, Tlapanco points to Elges's statements that Elges knew the difference between a username and display name on Kik yet failed to verify the username of the individual sending the messages to A.F. With this knowledge, Tlapanco argues, it was reckless not to verify the username of the individual threatening A.F. Elges sought to corroborate A.F.'s allegations by speaking to other students as well as viewing A.F.'s Kik messages and photographs on her phone and iPod. Yet, despite having access to A.F.'s devices and other means of verification, Elges did not confirm the perpetrator's username.

Elges responds that, in assuming that "anonymous" was the username and not merely the display name, he was simply relying on the information he had received from A.F. and her friends. Yet the only evidence that the children (or anyone else) ever told Elges that "anonymous" was the *username* is Elges's own deposition testimony, which, in this posture, we cannot assume that a jury would credit. Indeed, a reasonable jury could find grounds in the record to question Elges's assertion. A.F. testified that what she saw when communicating with the individual on Kik was the user's *display name*, not the username, and that she did not know the username of the person harassing her. As a Kik user, A.F. was familiar with the difference between the two names and, in fact, testified that she explained the difference to the police. A reasonable jury could credit A.F.'s testimony and infer from it that she would not have told the police that anonymous was her harasser's username. A reasonable jury could find further support for this inference in the original written statements that A.F. and a friend of hers each provided to the police, as well as Elges's own initial investigation reports. Although these documents identify the Kik user as "anonymous," none of them indicates that A.F. or anyone else ever told Elges that anonymous was the suspect account's username.

Second, Elges requested and received information from Kik about the user and the account activity for the username "anonymous." Elges received Kik's response on March 14, 2014, including IP addresses, related devices, user location, and an email address associated with the account. Kik's response also included an activity log with the date and time, device used to access Kik, and "extra data." DE 54-7, Kik Request Resp., PageID 1451–65. Tlapanco argues that this data "confirmed Tlapanco's innocence [because] none of the messages sent to the victim or her friends could be traced to Tlapanco's Kik account." CA6 R. 23, Appellant Br., at 35.

Although the inconsistencies are not self-evident upon cursory inspection, a reasonable jury could find that an officer comparing the time and date of A.F.'s messages and those from anonymous would realize that anonymous did not send the messages. Elges failed to include or consider this exculpatory evidence in his affidavit. This omission is material as it is "the kind of thing the judge would wish to know" to determine if the alleged illegal conduct is connected to the place sought to be searched. *Wesley*, 779 F.3d at 433 (quoting *Peet v. City of Detroit*, 502 F.3d 557, 570 n.3 (6th Cir. 2007) (Holschuh, J., concurring in part and dissenting in part)).

Finally, as further evidence that Elges recklessly disregarded information suggesting that anonymousfl was the username threatening A.F., not anonymous, Tlapanco directs our attention to the Excel spreadsheet of A.F.'s Kik messages created by Liposky and given to Elges. Tlapanco submitted excerpted screenshots of the spreadsheet, showing that the spreadsheet includes columns for the Kik name (i.e., display name), the Kik username, and the contents of A.F.'s Kik messages. When the cells are collapsed, the content of the display name and username columns appears largely cut off. Elges testified that he "looked at the spreadsheet [but] just did not expand the [username] cell." DE 42-2, Elges Dep., PageID 473. Elges saw the collapsed username column stating "anonymous," but because he did not expand the cell, he "did not see the last two letters of the cell." *Id.* at 474. A reasonable jury could find that Elges's decision to not expand the cell and confirm the username of the account sending the messages—where that cell and many others appeared incomplete when not expanded—was reckless and resulted in a material omission of the correct username from the affidavit.

In sum, Tlapanco presented "substantial evidence of . . . reckless disregard" rebutting the presumption of probable cause by "present[ing] proof that at the time [Elges] swore out the [search warrant] affidavit, [Elges] . . . possessed information that contradicted the sworn assertions." *Butler*, 936 F.3d at 419. Specifically, while a reasonable jury could find that Elges was merely negligent, when we view the evidence in the light most favorable to Tlapanco as we must, a reasonable jury could alternatively find that Elges acted recklessly. Elges did not independently verify the username despite access to devices with A.F.'s Kik messages, he possessed data showing that the username anonymous did not send the messages to A.F., and he viewed a spreadsheet that included a specific column showing the username sending the

messages was "anonymousfl."  And the warrant was based entirely on the purported connection between the threatening messages and the username "anonymous," so it is obvious that this information was material.  Elges is not entitled to qualified immunity on the unlawful search and seizure claim.

2.

Tlapanco's next § 1983 claim is that Elges arrested him without probable cause.  Whether or not the district court properly granted summary judgment to Elges on the basis of qualified immunity turns on whether a reasonable jury could find that Elges violated Tlapanco's clearly established Fourth Amendment right to be free from arrest without probable cause.  We conclude that a reasonable jury could find that Elges lacked probable cause to arrest Tlapanco and that the right to be free from arrest without probable cause was clearly established.**[2]**  We therefore reverse the district court's grant of summary judgment on the basis of qualified immunity with respect to the wrongful arrest claim.

To prevail on a false arrest claim under § 1983, "a plaintiff [must] prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005).  An arrest is supported by the requisite probable cause when, at the time of that arrest, "the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Wesley*, 779 F.3d at 429 (alterations in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  A showing of "probable cause provides a complete defense to a claim of false arrest." *Halasah v. City of Kirtland,* 574 F. App'x 624, 629 (6th Cir. 2014).

---

**[2]**Because Tlapanco resided in New York, the arrest warrant was sent to Thornton in New York to effectuate Tlapanco's arrest.  Elges did not personally arrest Tlapanco.  Elges was responsible for swearing out the affidavit upon which the arrest warrant relied, and no other independent investigation was carried out by the officers in New York before arresting Tlapanco.  Here, Elges briefly mentioned he did not physically participate in the arrest but failed to develop any argument that these claims could not proceed on this basis, thereby forfeiting this issue. *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016).  In an unpublished decision, this court has been willing to assume that a plaintiff can bring a false arrest and malicious prosecution claim against an officer in spite of the fact that he was not the arresting officer and there was an arrest warrant. *See Garcia v. Thorne*, 520 F. App'x 304, 307 (6th Cir. 2013).  Because Elges has not argued to the contrary, we assume the same for this case, given Elges's primary role in the investigation, search and seizures of the electronic devices, and swearing out the affidavit in support of the arrest warrant.

Because Tlapanco's arrest warrant was issued by a judge, he must make a substantial showing that Elges's sworn statements supporting the arrest warrant included "material false statements [made] either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Vakilian*, 335 F.3d at 517. In addition to the evidence discussed above, Tlapanco points to other exculpatory evidence gathered by Elges after the interview with Tlapanco and the search and seizure of his devices. In particular, Tlapanco provides evidence Elges knew: (1) none of Tlapanco's devices included images of A.F. or Kik messages with A.F., and (2) Tlapanco denied soliciting or receiving images from minors. Because a reasonable jury could find that Elges's sworn statements supporting the arrest warrant were recklessly indifferent to the truth that Tlapanco did not hack or communicate with A.F., and Tlapanco's right to be free from arrest without probable cause was clearly established, Elges is not entitled to qualified immunity on this claim.

First, Tlapanco's seized electronic devices did not contain any images of A.F. or Kik messages with A.F. The OCSO completed a forensic search of Tlapanco's seized electronic devices including iPods, laptops, and a cell phone. According to the police log, Tlapanco's iPod contained "numerous" explicit images. DE 44-3, OCSO Case Report, PageID 674. Most significantly, however, officers found no images of A.F. on the devices. The forensic report also included Kik messages, "but the earliest date of the messages stored on the Ipod [sic] [was] March 17, 2014." *Id.* at 675. The fact that no images of A.F. were found on Tlapanco's electronic devices provided Elges additional exculpatory evidence that Tlapanco was not responsible for hacking A.F. or sending the Kik messages. Depending on their content, the images on Tlapanco's iPod may have given the officers probable cause to investigate and arrest Tlapanco for other crimes, but they did not provide the officers inculpatory evidence relating to A.F. The arrest warrant charged Tlapanco with computer crimes and child sexually explicit activity specifically relating to interactions with A.F. A reasonable jury could find the failure to discover any images of A.F. or Kik messages with A.F. in Tlapanco's possession provided additional exculpatory evidence undermining any reasonable belief of probable cause.

Second, Elges also interviewed Tlapanco at his apartment and Tlapanco provided a written statement. Elges argues that Tlapanco's interview and statements connect Tlapanco to

A.F. because Tlapanco "admitted he used Kik, admitted his username on Kik was Anonymous, admitted he asked girls for nude photographs, and did not deny that he may have requested photographs from the victim." CA6 R. 25, Appellee Br., at 37. The fact that Tlapanco used the Kik username anonymous was previously established; this fact does not provide additional support for Elges's probable cause determination.

Moreover, when viewed in context of the entire interview it is clear that Tlapanco denied allegations of receiving or soliciting nude pictures from anyone underage including A.F. The officers questioned Tlapanco about A.F., but he did not "remember doing such a thing. It may have happened, but as the officers said, it may have been a one-time thing, just feeling crazy that day. [He did not] know for sure, and without the [message] logs, [he could not] confirm that it happen[ed]. [He did] not deny[] it either." DE 54-9, Tlapanco Police Statement, PageID 1475. Later in the statement, Tlapanco reiterated that he did not want to be "forced to admit to something [he's] never done" and has "<u>never</u> received nude pictures from any one <u>underage.</u> [He] ha[s] asked for non-nude clothed pictures, just to put a face on the username. Anyone who has asked [him] to stop, [he] ha[s] stopped completely. [He] believe[d] that going through the [messages] log w[ould] reveal the most information." *Id.* at 1476–77; *see also* DE 44-3, OCSO Case Report, PageID 671, 673. Elges showed Tlapanco Kik messages taken from A.F.'s phone and Tlapanco specifically stated that he did not send the messages. Viewed as a whole, Tlapanco's statements deny any alleged solicitation or receipt of explicit pictures from minors and direct the officers to review the Kik messaging logs to verify this claim.

Despite Tlapanco's substantial showing that Elges possessed information establishing that Tlapanco did not hack A.F. nor communicate with her on Kik, Tlapanco was arrested pursuant to a warrant and therefore needs to prove: "(1) that the officer applying for the warrant, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that created a falsehood[,] and (2) that such statements or omissions were material to the finding of probable cause." *Halasah*, 574 F. App'x at 629.

Tlapanco's claim is weakened by the lack of documentation regarding what false statements or material omissions Elges made to secure the arrest warrant. Elges swore out the information pertaining to the arrest warrant rather than submitting an affidavit. Neither side

presented a transcript or affidavit of the testimony, so there is no record of the statements or omissions made to secure the arrest warrant. The arrest warrant itself states that Elges, as the complaining witness, filed a sworn complaint providing support for the eight criminal counts included. Tlapanco's evidence, however, suggests that a judge would not have issued the arrest warrant if Elges had presented all relevant exculpatory information. A reasonable jury could find that Elges did not have probable cause to conclude that Tlapanco was connected to the conduct at issue, and that the judge would not have issued the arrest warrant but for recklessly false statements or material omissions by Elges. A reasonable jury could find that Tlapanco was arrested without probable cause, a violation of a clearly established right. Accordingly, Elges is not entitled to qualified immunity.

3.

Tlapanco argues that the district court erred in granting summary judgment to Elges on the malicious prosecution claim.[3] Elges is entitled to qualified immunity unless Tlapanco has shown that a reasonable jury could find that Elges violated his Fourth Amendment right to be free from malicious prosecution and that a reasonable officer would have been aware of the violation. Because he has made such a showing, we reverse the district court's grant of summary judgment to Elges on the basis of qualified immunity on the malicious prosecution claim.

The elements for a malicious prosecution claim under the Fourth Amendment, as set out in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), are: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (4) that "the criminal proceeding

---

[3]The concurrence points to the mislabeling of the "malicious prosecution" offense as such. Indeed, this court has noted that this label is a "misnomer," and is better labeled as the right "to be free from continued detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 747, 750 (6th Cir. 2006). This court has not, however, concluded that a false arrest offense and malicious prosecution offense are not separate and distinct claims. The gravamen of a so-called malicious prosecution offense, arising from the Fourth Amendment's prohibition against unreasonable searches and seizures, "is continued detention without probable cause." *Id.* at 748. This offense is separate and distinct from a false arrest offense. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

must have been resolved in the plaintiff's favor." *Id.* at 308–09 (alterations in original) (first quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007), then quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)). There appears to be no dispute that Tlapanco suffered a deprivation of liberty—he was incarcerated for five weeks after his initial seizure—or that the proceeding was eventually resolved in his favor, leaving us to resolve only the first and second elements.

"Under the first element, an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute, so long as the plaintiff can show that the officer 'influenced or participated in the decision to prosecute.'" *Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017) (quoting *Sykes*, 625 F.3d at 311–12)). "Providing reports, affidavits, or other investigative materials containing falsehoods, omissions, or misstatements to a prosecutor can constitute participation when (1) those materials formed the basis for the charge," and "(2) the falsehoods, omissions, or misstatements were made deliberately or with reckless disregard for the truth." *Meeks v. City of Detroit*, 727 F. App'x 171, 178 (6th Cir. 2018). Tlapanco provided evidence that Elges participated in and influenced the decision to prosecute. Elges requested the arrest warrant from the Oakland County Prosecutor's Office and swore out the arrest warrant to the judge. Although the Oakland County Prosecutor's Office authorized the arrest warrant and created the charging document, Elges supplied the reports and investigative materials forming the basis for the specific charges. The evidence shows Elges influenced and participated in the decision to prosecute.

Under the second element, a reasonable jury could find that there was a lack of probable cause to prosecute Tlapanco. As discussed above, Tlapanco presented substantial evidence that Elges possessed information showing there was no probable cause to arrest and prosecute him yet recklessly omitted this information.

Accordingly, Tlapanco has provided evidence from which a reasonable jury could find that Elges violated Tlapanco's "clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by . . . 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King v.*

*Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017) (citations omitted). Elges is not entitled to qualified immunity on this claim.

### 4.

The district court correctly determined that Elges was entitled to summary judgment on the search and seizure claims related to the copying of Tlapanco's devices because Tlapanco provided no evidence that Elges was involved in the copying. *See Burley*, 729 F.3d at 619. We therefore affirm the grant of summary judgment on this claim.

### B.  Claims Against McCabe

We affirm the district court's grant of summary judgment to McCabe based on qualified immunity.  First, Tlapanco provided no evidence that McCabe was involved in the search of Tlapanco's apartment or the seizure of his electronic devices, entitling him to summary judgment as to those claims.  Second, because McCabe returned Tlapanco's electronic devices the same day the Michigan trial court filed its written decision, we find McCabe was also entitled to summary judgment as to that claim.  We conclude that there was no clearly established Fourth Amendment right against investigators retaining a forensic mirror of electronic devices after returning the physical devices.  As this issue is one of first impression and the factual record is not comprehensively developed, we decline to address the merits of the alleged constitutional violation.

### 1.

The district court correctly determined that McCabe was entitled to summary judgment on Tlapanco's unlawful search and seizure claim as Tlapanco provided no evidence that McCabe was involved in the investigation, preparation of the affidavit, search of Tlapanco's apartment, or seizure of the electronic devices. *See Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) ("To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in [unlawful conduct]." (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010))).  We affirm the district court's grant of summary judgment on this claim.

2.

Tlapanco claims that McCabe violated his Fourth Amendment right to be free from unreasonable searches and seizures of his personal property. He first claims that the retention of his electronic devices after the Michigan trial court's oral decision granting the government's motion to dismiss the criminal charges without prejudice was an unlawful seizure. We, however, agree with McCabe that Michigan trial court's order went into effect with its written decision, rather than oral pronouncement.**4** Because the electronic devices were returned the same day the written order was issued, McCabe's retention of the devices for the two days in between the pronouncement of the oral decision and filing of the written decision was not an unreasonable seizure. The district court properly granted McCabe qualified immunity on this claim as Tlapanco failed to provide evidence of a Fourth Amendment violation.

Second, Tlapanco claims that making a forensic mirror (i.e., copying) of his electronic devices, including his cell phone and laptops, after the trial court's oral decision to return his property was an unlawful search and that then retaining the forensic mirrors after returning the physical devices and dismissal of the criminal prosecution is a continuing unlawful seizure.

We first note that it is not mandatory to address the qualified immunity prongs sequentially; rather, discussion of the first prong will in some cases result "in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009) (permitting federal courts to skip to the clearly established prong of the qualified immunity analysis). We decline to address the first prong of the qualified immunity analysis and proceed directly to the clearly established prong in assessing this claim against McCabe as that prong is dispositive here.

---

**4**The parties dispute when the trial court's order went into effect. There was a two-day period between the Michigan trial court's oral decision on August 12, 2014, and written order on August 14, 2014, during which Tlapanco's devices were retained. The parties dispute the effect of the oral decision. Although "courts generally speak through their judgments and decrees," *Arbor Farms, LLC v. Geostar Corp.*, 305 Mich. App. 374, 387 (Mich. Ct. App. 2014), oral rulings in Michigan courts are binding when they contain the "indicia of formality and finality comparable to that of a written order." *Id.* at 388. Here, the oral ruling contained no such indicia of formality as the defendants' counsel was directed to "prepare the order and provide it to the Court." DE 44-8, Prelim. Examination Tr., PageID 725.

This circuit has not previously addressed the Fourth Amendment implications of mirroring a suspect's electronic files prior to returning the physical device and maintaining the forensic mirror after dropping a criminal prosecution. Indeed, no circuit has assessed the constitutionality of this practice, let alone deemed it unlawful. The Second Circuit considered the issue in the context of a motion to suppress in *United States v. Ganias* (*Ganias I*), 755 F.3d 125 (2d Cir. 2014), but ultimately, after *en banc* rehearing, the full court decided not to reach the issue of whether the retention of copied hard drive data was a Fourth Amendment violation warranting suppression of the documents because it found the agents acted in good faith reliance on the basis of a valid warrant. *United States v. Ganias* (*Ganias II*), 824 F.3d 199, 221–25 (2d Cir. 2016). Similarly, in the context of a motion to suppress, the First Circuit considered whether the retention of all copied emails collected pursuant to a warrant during the pendency of a defendant's criminal appeals warranted suppression and held that it was reasonable to interpret the warrant to permit retention of the data until the appeals were completed. *United States v. Aboshady*, 951 F.3d 1, 6–8 (1st Cir. 2020).

The absence of any existing precedent on this issue is dispositive of Tlapanco's unlawful search and seizure claims against McCabe. In the absence of any guiding precedent, a reasonable officer in McCabe's position would not have known that he was committing a constitutional violation when he mirrored electronic devices seized pursuant to a search warrant and then retained the forensic mirrors after the charges had been dismissed and the devices returned to their owner. Therefore, we affirm the district court's grant of qualified immunity to McCabe on these claims.

## C. Claims Against Oakland County

On appeal, Tlapanco only challenges the district court's grant of summary judgment to Oakland County with respect to the search and seizure claim for the mirroring of his electronic devices after the charges were dismissed. The district court, having concluded that McCabe was entitled to qualified immunity, did not address this issue. Tlapanco argued two theories of municipal liability: that Oakland County failed to train its officer and that McCabe's decision, as a final policy maker, to mirror the devices created the official policy of Oakland County.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). This court has consistently held that a municipality cannot be held liable on a failure to train theory where a right was not clearly established. *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017) ("[A] municipality cannot *deliberately* shirk a constitutional duty unless that duty is clear."); *Hagans v. Franklin County*, 695 F.3d 505, 511 (6th Cir. 2012) ("[A] municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc)). Because there was no clearly established right not to have an electronic device seized pursuant to a search warrant, mirrored, and the forensic mirror retained, Oakland County was not deliberately indifferent to the potential constitutional violation.

"In *City of St. Louis v. Praprotnik*, [485 U.S. 112 (1988)], the Supreme Court held that when a plaintiff alleges that an unconstitutional municipal policy is evinced by a single decision by a municipal official, 'only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability' and that state law determines whether a municipal official has 'final policymaking authority.'" *Jones v. Clark County*, 959 F.3d 748, 762 (6th Cir. 2020) (quoting *Praprotnik*, 485 U.S. at 123). Whether an individual is a final policymaker for purposes of § 1983 liability is a question of state or local law, and a showing of policymaking authority typically requires specific evidence that the official's decisions were not subject to review or that the official could set policy related to broad goals. *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005); *see also Baar v. Jefferson Cty. Bd. of Educ.*, 476 F. App'x 621, 638 (6th Cir. 2012) ("[T]he actions of a single official can only create liability for the local government where that official has final policymaking authority, and whether an official has such final authority is a question of state law."). Tlapanco has not demonstrated that state or local law vested McCabe with the authority to make county policy nor that McCabe's "decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Adair v. Charter County of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)). Tlapanco's

exclusive reliance on McCabe's deposition testimony regarding his second-in-command duties within OCSO is insufficient to satisfy his burden to provide evidence that McCabe had final policymaking authority to establish particular search and seizure practices for Oakland County. The district court properly granted summary judgment to Oakland County on Tlapanco's municipal liability claim.

## IV.

For the reasons set forth above, we reverse the grant of qualified immunity to Elges on Tlapanco's Fourth Amendment claims based on the initial searches and seizures of his belongings, arrest without probable cause, and malicious prosecution. We affirm the district court's grant of summary judgment to Elges on Tlapanco's unlawful search and seizure claim regarding mirroring his electronic devices. We affirm the grant of qualified immunity to McCabe on all of Tlapanco's claims. Finally, we affirm the grant of summary judgment to Oakland County.

_____

**CONCURRENCE**

_____

THAPAR, Circuit Judge, concurring.  I concur in the thoughtful majority opinion, which correctly resolves the disputed issues before us.  I write separately to offer a reminder that "malicious prosecution" is a troublesome label for claims based on unreasonable pretrial detention.  As our court explained years ago, this cause of action is better characterized "simply as the right under the Fourth Amendment to be free from continued detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006).  In other words, it's "a plain-vanilla Fourth Amendment claim." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) (Easterbrook, J.), *on remand from* 137 S. Ct. 911 (2017).

While old habits can be hard to break, I encourage parties and judges in this circuit to follow the Supreme Court's lead in *Manuel* and "eschew[] the 'malicious prosecution' label." *Pagán-González v. Moreno*, 919 F.3d 582, 608 (1st Cir. 2019) (Barron, J., concurring) (discussing *Manuel*, 137 S. Ct. 911); *see also Jones v. Clark Cty.*, 959 F.3d 748, 777 (6th Cir. 2020) (Murphy, J., concurring in part and dissenting in part) (noting that *Manuel* "conspicuously avoided that label").  The label serves little purpose and leads only to confusion.

If you doubt it, just look at this case.  The police arrested Tlapanco pursuant to a warrant after a magistrate judge made a (possibly invalid) probable-cause determination.  He was then held on that warrant throughout his detention.  Thus, by all appearances, he suffered no more than one unreasonable seizure of his person.  Logically, that *one* seizure should give rise to *one* Fourth Amendment claim.  Yet Tlapanco brings two—a false-arrest-and-imprisonment claim *and* a "malicious prosecution" claim, both based on the same seizure and ensuing detention.  The majority opinion properly accepts this presentation given that all parties litigated on this basis.  Still, it's worth pointing out that the parties' presentation seems duplicative.

What explains this redundancy?  If you study Tlapanco's pleadings, it's unclear whether he originally intended to bring the "malicious prosecution" count as a Fourth Amendment claim.  Rather, he seems to have pled the false-arrest-and-imprisonment count to cover the Fourth

Amendment injury of unreasonable seizure and detention and then to have proffered a "malicious prosecution" claim based on some independent constitutional right to be free from wrongful criminal charges.

But this court has not recognized a freestanding malicious-prosecution claim under due-process principles. Or at any rate, not since before *Albright v. Oliver*, which rejected a substantive-due-process right to be free from unreasonable prosecution. 510 U.S. 266, 268 (1994); *see also Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (discussing pre-*Albright* circuit precedent).

What this court has recognized—and repeatedly *called* "malicious prosecution," though often with reluctance—is a Fourth Amendment claim for unreasonable seizures related to prosecutions. *See, e.g.*, *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020); *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010); *Gregory*, 444 F.3d at 750; *see also Jones*, 959 F.3d at 777 (Murphy, J., concurring in part and dissenting in part). As we have explained, "malicious prosecution" is a "misnomer" for this kind of claim for at least two reasons: (1) it has no separate "malice" element; and (2) since it's rooted in the Fourth Amendment, it targets the wrong of unreasonable detention, not the wrong of unjustified prosecution as such. *Howse*, 953 F.3d at 408–09. In other words, both the adjective and the noun in "malicious prosecution" are misleading.

Even so, the label has stuck and is now embedded in our caselaw. So you can hardly blame the parties for their initial assumption that Tlapanco could bring both a "malicious prosecution" claim and a false-arrest-and-imprisonment claim.[1] Later, as the case proceeded, the parties read the fine print and shifted the "malicious prosecution" count onto a Fourth Amendment footing. But no one seemed to notice that this produced two Fourth Amendment

---

[1]While we're at it, we might want to stop using the "false arrest" and "false imprisonment" labels too. The elements of common-law false arrest or false imprisonment are not a perfect match for a Fourth Amendment unreasonable-seizure claim (for instance, the required interference with liberty in false imprisonment is a "confinement," not a "seizure"). *See Dobbs' Law of Torts* § 41 (2d ed. June 2020 update); *Restatement (Second) of Torts* § 35 (Am. Law Inst. 1965). For maximum clarity, we should simply call every unreasonable-seizure claim what it is: an unreasonable-seizure claim.

claims for a single Fourth Amendment injury. To avoid this confusion in the future, we should stop calling it "malicious prosecution" when a plaintiff brings a Fourth Amendment claim based on unreasonable pretrial detention.