NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0370n.06

Case Nos. 21-2688/2711

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 12, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANDREW LONGUSKI, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| RYAN AKERS (21-2688); GARY DEMERS (21-2711), | ) ) ) | |
| Defendants-Appellants. | ) ) ) | OPINION |

Before: COLE, NALBANDIAN, and BUSH, Circuit Judges.

NALBANDIAN, Circuit Judge. President John F. Kennedy once remarked that "nothing compares to the simple pleasure of a bike ride." Andrew Longuski would have agreed before the events that unfolded one spring night in May 2018. That night, while attending a conference on Mackinac Island in Michigan, Longuski hitched a ride on the back of a friend's bicycle. The pair only made it a block before a local trooper pulled them over. Double-riding, it turned out, violated Michigan law. And the bicycle, Longuski soon learned, had been stolen from a local.

What started as a joyride resulted in a criminal prosecution. Longuski was arrested and charged for petty larceny and disturbing the peace. But the case never went to trial, and the prosecutor dropped the charges.

Longuski sued the two officers involved, arguing that the prosecution violated his Fourth Amendment rights. The officers asserted qualified immunity in response, but the district court

1

denied their motions. For the following reasons, we reverse one officer's appeal and dismiss the other officer's appeal for lack of jurisdiction.

I.

In mid-May 2018, First Lieutenant Andrew Longuski, a long-serving officer with the Michigan State Police, arrived on Mackinac Island for a professional conference. The conference kicked off on a Friday night. And as its official festivities—an opening banquet—wound down, its unofficial festivities—a bar crawl—began.

Longuski hit the town with some of his fellow officers. The group started their night at the Pink Pony Bar but decided to move the party to Horn's Gaslight Bar & Restaurant a few hours later. A little over a block separates the Pink Pony from Horn's. So the revelers set off on foot. That is, all the revelers except for Sergeant Derrick Jordan, who "rode past the group[] on a bike he had brought to the Pink Pony." (R. 28, First Amended Complaint, PageID 400.) Longuski saw his chance to hitch a ride and skip the walk to Horn's. He asked Jordan "to hold on a minute so he could jump on" behind him. (*Id.*)

The pair covered about 40 yards before Trooper Ryan Akers stopped them. Double-riding, Akers warned, violated Michigan law. Chastened, Longuski and Jordan got off the bike, left it in the middle of the street, and continued to Horn's. In the meantime, another officer ran the tags on the bike. The search revealed that the bike had been reported stolen earlier that night. After learning about the theft, Akers returned to Horn's to confront the joyriding pair.

Outside the bar, Akers accused Longuski and Jordan of stealing the bike and asked them to accompany him to the police station. Longuski proclaimed his innocence to Akers. Jordan backed him up. Tensions flared, and the encounter culminated in Longuski telling Akers to "either book him for possessing a stolen bike or let him go back to the restaurant." (*Id.* at PageID 402.)

Akers let the two off the hook—but only for the moment. The next morning, Akers submitted an investigative report and a warrant request for Longuski and Jordan. He recommended that Longuski and Jordan be charged with "larceny less than $200 and disorderly conduct." (R. 31-3, Akers Investigation Report, PageID 448.) Another officer submitted a report as well. And a third officer, Gary Demers, received the two reports and sent them to the prosecutor. The prosecutor agreed with Akers's recommendations, authorizing charges for larceny less than $200 and disturbing the peace.

The charges didn't stick. A few months later, the prosecutor dropped the case against Longuski without prejudice. Longuski then sued Akers and Demers for violating his Fourth Amendment rights, contending that both officers "omitted exculpatory information, with reckless disregard for the truth, when providing information to the Prosecutor[.]" (R. 28, First Amended Complaint, PageID 406.) The officers moved for summary judgment on qualified immunity grounds, which the district court denied. This interlocutory appeal followed.

II.

We start with the basics: The Fourth Amendment "conditions warrants on probable cause and prohibits unreasonable seizures." *Newman v. Township of Hamburg*, 773 F.3d 769, 771–72 (6th Cir. 2014). Under clearly established law, an officer violates those basics "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Id.*; *see also Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020). The resulting claim is known as malicious prosecution. It requires a plaintiff to show that the officer lacked probable cause, that the officer "participated" in the prosecution decision, and that the plaintiff was seized as a result. *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (brackets omitted).

Longuski asserts such a claim. We ask two questions in response. Did Akers and Demers violate his constitutional rights? And if so, was the unlawfulness of their conduct clearly established at the time? *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The district court denied summary judgment, refusing to consider either question since "questions of material fact" remained. (R. 41, Order & Op., PageID 643.) We review its decision de novo, asking whether, on Longuski's view of the facts, Demers and Akers are entitled to judgment as a matter of law. *See Tlapanco*, 969 F.3d at 647. But we lack jurisdiction over either officers' appeal if their "sole argument . . . goes to whether there exists a genuine issue of fact for trial." *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006). This is because a defendant denied qualified immunity may bring an interlocutory appeal only if that appeal involves an "abstract or pure legal issue." *Id.* at 742 (quotation omitted).

*Akers*. Our analysis begins with probable cause. Probable cause exists when there are enough "facts and circumstances" to make a reasonable officer believe that the "accused was guilty of the crime charged." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (internal quotation omitted). "An objective, not a subjective, standard applies." *Barrera v. City of Mt. Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021). The question is whether the evidence—including the known exculpatory evidence—adds up to probable cause at the time of arrest. *See Klein v. Long*, 275 F.3d 544, 551–52 (6th Cir. 2001); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

Longuski contends this probable-cause calculation comes out in his favor. According to him, Akers's investigative report contained false information and omitted exculpatory information. Correct those mistakes, he argues, and the bottom falls out of the prosecution's case. To assess this claim, we replace parts of Akers's report with Longuski's version of the story. *See Penn v. Bergtold*, 803 F. App'x 900, 905 (6th Cir. 2020) (citing *Darrah v. City of Oak Park*, 355 F.3d

301, 312 (6th Cir. 2001)). That swap leads to a few key differences. First, that the video footage showed Jordan rode up to the Pink Pony on the bike alone, and Akers saw this footage. Second, that the Pink Pony's hostess told Akers that everyone thought the bike belonged to Jordan. Third, that Jordan insisted Longuski knew nothing about the bike. And fourth, that the surveillance and body-camera footage showed that Longuski didn't act intoxicated or use swear words.

Although Akers's appeal pays lip-service to Longuski's account, most of his probable-cause arguments contest Longuski's version of the facts. He claims that "the surveillance video described" in Longuski's complaint "was not readily available to" him; that Longuski appeared "highly intoxicated and used frequent profanity"; and that "Jordan had not ridden any kind of bike to the Pink Pony," instead taking it from the curb. (Akers Br. at 9, 22; R. 31-3, Akers Investigation Report, PageID 446.)

Our probable-cause analysis turns on these contested facts. Consider the larceny charge first. Michigan law makes it a misdemeanor to take and carry away the "personal property" of another "with intent to steal that property" and "permanently deprive [the victim]" of it. *People v. March*, 886 N.W.2d 396, 404 & n.6 (Mich. 2016) (quoting 3 Torcia, Wharton's Criminal Law 347 (15th ed.)); *People v. Cain*, 605 N.W.2d 28, 44 (Mich. Ct. App. 1999). We are hard-pressed to see how a reasonable officer with access to the Pink Pony's surveillance footage could believe that Longuski intended to "permanently deprive" the victim of her bicycle. According to Longuski, that footage showed that Jordan rode the stolen bike to the Pink Pony alone, exited the venue 11 minutes later, got on the bike by himself, and peddled for about a minute before Longuski joined him. To be sure, a reasonable officer who viewed the video would have probable cause to believe someone—likely Jordan—had a hand in the bike theft. But no such probable cause exists for Longuski, who did not carry away the bike and had no reason to know it was stolen. Akers

defends against this conclusion by asserting he didn't have access to the video footage. But this argument turns on a contested fact, not law. So we lack jurisdiction to consider it.

The same goes for the disturbing-the-peace charge. The prosecutor charged Longuski under a Michigan statute that makes it a misdemeanor to "make or excite" a "disturbance . . . in any . . . street, lane alley, [or] highway." Mich. Comp. Laws § 750.170 ("Disturbance of lawful meetings"). A disturbance, under that law, is "[a]ny act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace." *People v. Weinberg*, 149 N.W.2d 248, 252 (Mich. Ct. App. 1967) (quoting Black's Law Dictionary 563 (4th ed., 1951)); *see also People v. Rice-White*, No. 350350, 2021 WL 220801, at \*2 (Mich. Ct. App. Jan. 21, 2021) (explaining that disturbance "embraces more than actual or threatened violence"; rather, it sweeps in "an interruption of peace and quiet; a violation of public order and decorum"). And a conviction, under that law, is often upheld where the evidence shows a defendant's loud and abusive behavior disrupted a public place or meeting.[1]

Longuski insists he didn't curse, act intoxicated, or raise his voice. On this version of the facts, we doubt a reasonable officer would have probable cause to believe that Longuski "excite[d] any disturbance" or "interrupt[ed] the peace and quiet" of Mackinac Island's downtown bar scene.

---

[1] *Compare Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) (holding that no reasonable officer would find that probable cause existed to arrest a member of the public who used an explicative while speaking at a chaired public assembly), *with Burton v. City of Detroit*, No. 20-CV-12182, 2022 WL 479413, at \*5 (E.D. Mich. Feb. 16, 2022) (finding probable cause to arrest the defendant for making a disturbance under § 750.170 where the defendant "refused to leave the meeting" even after he was ruled out of order three times), *Rice-White*, 2021 WL 220801, at \*2–3 (upholding a conviction under § 750.170 where a defendant's screaming accusations at the sheriff's deputies "violated the courthouse's decorum, and interrupted the work of at least three clerks"), *People v. Bedwell*, No. 344820, 2019 WL 2439333, at \*3 (Mich. Ct. App. June 11, 2019) (same where the defendant was "being loud and using swear words" in a courthouse), *and People v. Mash*, 206 N.W.2d 767, 770 (Mich. Ct. App. 1973) (same where the defendant took part in an afterhours sit-in at a public university and the sit-in prevented the janitor from doing his job).

*See* Mich. Comp. Law. § 750.170; *Rice-White*, 2021 WL 220801, at \*3. Akers responds by insisting that Longuski acted "highly intoxicated and used frequent profanity." (Akers Br. at 9.) But this reasoning, too, turns on contested facts. We thus lack jurisdiction over this argument as well.

Because Akers failed to "concede the most favorable view of the facts to the plaintiff," we dismiss his appeal for lack of jurisdiction. *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020) (internal citation omitted).

*Demers*. Our analysis for Demers's appeal starts in a bit of a different place. As we just explained, probable cause for either charge looks dubious on Longuski's version of the facts. But lack of probable cause, in and of itself, isn't enough to make or break a malicious-prosecution claim. Longuski must also show Demers "participated" in the prosecutor's charging decision. *See Sykes*, 625 F.3d at 308–09 (brackets omitted). In most cases, a prosecutor's independent charging decision breaks the causal chain for malicious-prosecution purposes. One exception exists: Where an officer's deliberate or reckless falsehoods result in prosecution without probable cause. *See id.* Longuski contends that his malicious-prosecution claim against Demers falls within this exception. We disagree.

As we see it, Demers played at best a supporting role here. Longuski's argument to the contrary goes as follows. Demers swore out the arrest warrants and filed a supplemental report about the video evidence. So Demers had "actual possession of exculpatory evidence" but failed to flag it and stop Longuski's arrest. (Longuski Br. at 15.) Failure to flag the evidence, Longuski continues, amounts to concealing the evidence. And concealing the evidence, he concludes, puts Demers on the hook for malicious prosecution.

Not so. To start, Longuski's complaint mentions Demers only a few times. His affidavit focuses solely on Akers. And his own exhibits put Demers in the clear. When Akers sent over the videos, Demers turned them over to the prosecutor. And in his report about that evidence, Demers listed the body camera videos along with the surveillance tape from the Pink Pony, Horn's Bar, and the Chippewa Hotel. To be sure, his descriptions of the videos are brief. (R. 37-3, Supp. Report, PageID 624 ("This body-cam footage shows the interaction that law enforcement on Mackinac Island had with the suspects, as well as an interview with a witness . . . . This surveillance footage shows the suspects riding upon the stolen bicycle, and some of their interactions in/about some of the local establishments on the island.").) Still, his summaries described the videos' content and contained no falsehoods or misstatements.

In the end, any brevity on Demers's part "at worst shows negligence or perhaps a lack of attention to detail." *Newman*, 773 F.3d at 772. But mere negligence, without more, does not "amount to malicious prosecution." *Id.*; *see also Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (holding that "absent allegation[s] of blameworthy conduct . . . 'neutral' participation is insufficient to sustain a [] valid malicious prosecution claim"). This means Longuski's claim fails, and Demers is entitled to qualified immunity. *See Newman*, 773 F.3d at 772.

III.

For these reasons, we dismiss Akers's appeal for lack of jurisdiction and reverse the district court's denial of summary judgment for Demers.